IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

SCENIC HOLDING, LLC                                                                                    PLAINTIFF

v.                                         No. 4:03CV00598 GH

THE NEW BOARD OF TRUSTEES OF THE TABERNACLE
MISSIONARY BAPTIST CHURCH, INC., ET AL.                                            DEFENDANTS

**ORDER**

Pending before the Court is plaintiff's February 3rd motion for recusal based on the Court's actions during the hearing on plaintiff's motion to appoint a receiver and in denying its motion for summary judgment which plaintiff contends raises a reasonable question as to whether the undersigned is impartial or has a bias in favor of defendants because of their religious affiliation. Plaintiff asserts that the Court credited Joe Givens' testimony because he was a church member; permitted cross examination of plaintiff's witnesses regarding their religious beliefs as implicating credibility; questioning a witness based on what appears to be the Court's prior, extrajudicial knowledge regarding the Baptist denomination; making unnecessary statements regarding the church and its members as upholding the standards of Christ in being right and righteous; making sua sponte objections to plaintiff's counsel leading a witness who is a defendant; allowing repeated and lengthy witness voir dire; refusing to admit numerous proffered exhibits and not permitting Superior's agent to testify about the meaning of a word all of which completely prevented plaintiff from proving its legal and equitable issues of the case; denying plaintiff's motion for summary

-1-

judgment raising sua sponte the issue of mutuality of obligation; and accusing plaintiff's counsel of trying to persuade the Court to ignore Tabernacle's rules and regulations.

On February 13th, the New Board trustees filed a response that the Court was correct in its ruling applying Arkansas law that a valid mortgage must have been approved by resolution voted by a majority of the congregation in a meeting called for that purpose and what is the meaning of "trustee;" that the transcript excerpts are misleading when taken out of context; that the Court clearly relied upon the evidence at the hearing dealing with the governance of the church – not church beliefs; and that plaintiff was asking the Court to ignore well established law.

The Tabernacle trustee defendants also filed a response on February 13th that the two witnesses were not asked about their religious beliefs but about their knowledge of the governmental structure of the Tabernacle Baptist Church regarding the authorization of the mortgage; the Court properly applied Arkansas law; and the motion is untimely. They address three of plaintiff's assertions by countering: that the Court was admonishing plaintiff's counsel for unacceptable behavior in stating that Givens was lying instead of using proper procedures and techniques to impeach Givens' testimony; that the two witnesses were being questioned about their knowledge of how a Baptist church is governed which was relevant to the authority of the church to mortgage the property; and that the undisputed evidence was that Thompson, Givens and Howard were not trustees when the mortgage and modifications were signed and that the congregation had not met and voted to authorize anyone to sign such documents so the only conclusion that could be reached was the mortgage was void.

In <u>Von Kahl v. United States</u>, 242 F.3d 783, 793 (8th Cir. 2001), the appellate court stated:

With respect to his claim of judicial bias, the Supreme Court has made clear that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the

current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

See also, Moran v. Clarke, 296 F.3d 638, 649 (8th Cir. 2002)

The Eighth Circuit addressed the issue of whether a reassignment to a different judge was warranted upon remand in White v. Luebbers, 307 F.3d 722, 730 (8th Cir. 2002), as follows:

> Finally, petitioner asks that, if there is to be a remand, we direct the assignment of this case to another judge of the District Court. This argument is based upon a preliminary order of the District Court entered after our remand. The order stated that the Court had reached a "preliminary view" as to the meaning of our mandate. This preliminary view was consistent with the view ultimately taken by the District Court, that is, that our opinion on the first appeal opened up for consideration on the merits on remand only those issues asserted in the second amended post-conviction motion. The Court's preliminary order invited the parties to express their views on the matter, in light of the Court's stated initial inclination.
>
> ****
>
> The Supreme Court's opinion in Liteky v. United States, 510 U.S. 540 (1994), is dispositive of this point. So long as the court's expressed views come from the record of the case itself, or from representations properly made by the parties or their lawyers, nothing improper has occurred. "Not *all* unfavorable disposition towards an individual (or his case) is properly described by [the] terms" bias or prejudice. Id. at 550 (emphasis in original).

In Jones v. Luebbers, 359 F.3d 1005, 1013-1014 (8th Cir. 2004), the appellate court addressed the issue of recusal as follows:

> In the context of contempt proceedings, which often follow heated arguments and hostile comments, tempers understandably flare. Accordingly, allegations of personal bias are not uncommon in such proceedings. See Ungar v. Sarafite, 376 U.S. 575, 583-84, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); Murchison, 349 U.S. at 136-38; Offutt v. United States, 348 U.S. 11, 17, 75 S.Ct. 11, 99 L.Ed. 11 (1954). Where such allegations arise from contemptuous behavior in closed proceedings that evade outside review, the appearance of impartiality is great, application of the rule is simple, and due process may require disqualification. In Murchison, 349 U.S. at 136-38, the Court faced allegations of bias arising from Michigan's one-person grand jury procedure. In that case, the Court held that where a judge "was at the same time complainant, indicter, and prosecutor" the judge could not later preside over a contempt proceeding regarding one of the grand jury witnesses. Id. at 135. The Court said,

"[h]aving been a part of that process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused." Id. at 137.

By contrast, application of the rule is not as simple where the alleged bias is personal and the case involves no closed proceedings or alleged procedural infirmities. In such cases, the general rule that the Court articulated in Murchison and Tumey does not require disqualification unless the potential for bias is sufficiently great to tempt an "average man serving as a judge" to stray from impartiality. Id. The test for determining whether a potential for bias rises to this level is an objective inquiry:

> The test in determining if a judge's bias should be presumed in a particular case is whether, realistically considering psychological tendencies and human weaknesses, the judge would be unable to hold the proper balance between the state and the accused. In making this inquiry we, of course, presume the honesty and integrity of those serving as judges.

Dyas v. Lockhart, 705 F.2d 993, 996-97 (8th Cir. 1983) (citing Tumey, 273 U.S. at 532; Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); and Taylor v. Hayes, 418 U.S. 488, 501, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974)). In applying this test, the Court explained that we are not to hold judges to a superhuman standard that would allow no expressions of emotion, and that we are to presume the ability of judges to rule impartially notwithstanding personal attacks and challenges to their authority. Liteky v. United States, 510 U.S. 540, 555-56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); Ungar v. Sarafite, 376 U.S. 575, 583-84, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). However, disqualification may be proper where "[t]he record discloses not a rare flareup, not a show of evanescent irritation – a modicum of quick temper that must be allowed even judges ... [but] that instead of representing the impersonal authority of law, the trial judge permitted himself to become personally embroiled with the petitioner." Offut, 348 U.S. at 17 (finding a reduction in an attorney's contempt sanction necessary where the judge presiding at the contempt hearing had become personally embroiled and displayed excessive, ongoing hostility towards the attorney during the attorney's representation of a client in an underlying trial).

In Ungar, for example, disqualification of a judge from a post-trial contempt proceeding was not necessary even though the judge had been the target of contemptuous remarks in the form of a personal attack. 376 U.S. at 583-84. There the Court said, "We cannot assume that judges are so irascible and sensitive that they cannot fairly and impartially deal with resistance to their authority or with highly charged arguments about the soundness of their decisions." Id. at 584. Later, in Liteky v. United States, 510 U.S. 540, 555-56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), the Court stated:

> Not establishing bias or partiality ... are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal

>judges, sometimes display. A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune.

<u>Id</u>. (not addressing a due process challenge, but interpreting 28 U.S.C. § 455 (1974), the federal statute that governs the disqualification of federal judges). Accordingly, we must examine the allegations of bias in the present case in the context of these teachings and not presume that "a stern and short-tempered judge's ordinary efforts at courtroom administration" directed towards counsel are adequate grounds to find bias against a defendant.

Defendants have correctly pointed out that the record clearly reflects that plaintiff's characterizations of the Court's actions during the hearing are both incomplete and unwarranted. Plaintiff may disagree with the Court's factual and credibility findings, its evidentiary rulings and with its legal analysis that was unfavorable to plaintiff; however, that is not grounds for recusal. A reading of the entire transcript – when the portions relied on by plaintiff are put into context – plainly shows that plaintiff's portrayal of both the Court's demeanor and statements is erroneous.

In sum, the Court finds no legitimate basis for recusal in this case.

Accordingly, plaintiff's February 3rd motion (#93) for recusal is hereby denied.

IT IS SO ORDERED this 10th day of March, 2006.

*George Howard, Jr.*
UNITED STATES DISTRICT JUDGE